UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERIC LYONS,<br><div align="center">Defendant.</div> | )<br>)<br>)<br>)<br>)<br>) CRIMINAL NO. 1:22-cr-10233-1<br>)<br>) Sentencing Date: February 28, 2023 10:00 a.m.<br>)<br>)<br>) |

## SENTENCING MEMORANDUM OF ERIC LYONS

Eric Lyons ("Lyons") submits this memorandum in support of his request that the Court accept his plea, offered pursuant to Fed. R. Crim. P. 11(c)(1)(C), and order and impose a sentencing of two years of probation with a special condition that he serve the first six months in home confinement, 100 hours of community service, and restitution in the amount of $72,000.

Lyons and the Government agree that agreed upon sentence, proposed as part of the plea agreement proffered pursuant Fed. R. Crim. P. 11(c)(1)(C), is appropriate considering his prompt and full acceptance of responsibility.  The requested sentence is also "sufficient but not greater than necessary" to fulfill the sentencing factors set forth in 18 U.S.C. § 3553(a) based on the nature and circumstances of the offense and is consistent with sentences imposed on similarly situated defendants in cases involving financial fraud. 18 U.S.C. § 3553(a); *see Gall v. United States*, 522 U.S. 38, 44 (2007); *United States v. Booker*, 543 U.S. 200, 262 (2005).

### I.     Mr. Lyons's History and Characteristics

Mr. Lyons's story is one of hard work and dedication.  He grew up in Methuen, Massachusetts with his two brothers and parents. His parents were loving and instilled in him the importance of hard work.  His parents divorced when he was seven years old.  While academics

were important to him, he was subjected to constant bullying during high school.  After dropping out of high school, he worked hard to earn his GED, a decision his parents supported.  Despite his academic struggles, Lyons continued his studies at the University of Alabama Birmingham before transferring to Suffolk University where he earned an undergraduate degree in 2005.

In 1999, Lyons was married and has two daughters, ages 12 and 15.  Unfortunately, his marriage ended in divorce.  He now shares joint custody of his daughters who live with him part-time.  He is close with his daughters and plays an integral role in their lives, as illustrated in the pre-sentence report and the attached letters of support.[1]

## II.      The Nature and Circumstance of the Offense

Mr. Lyons accepts full responsibility for the conduct to which he pled guilty, which consisted of defrauding the victim by utilizing profits from her investment in a fund he managed with others for the benefit of other investors.  The victim lost $72,000 as a result if his conduct.  Mr. Lyons agrees that the Court should impose a restitution order in that amount at sentencing.  He appreciates the wrongfulness of his conduct and accepts full responsibility for it.

## III.     Defendant's Acceptance of Responsibility

Mr. Lyons promptly accepted responsibility for his conduct and agreed to plead guilty pre-indictment.  He is truly remorseful for his conduct and regrets the harm he caused the victim.

## IV.     The Purposes of Sentencing

Section 3553(a) lists four purposes of sentencing: (1) just punishment, (2) deterrence, (3) protection of the public, and (4) rehabilitation. Under the parsimony principle, the sentence

---

[1] Letters of Support from Mary Lyons, Mark Lyons and Michael Fattal, are attached hereto as Exhibits A, B and C.

imposed must be the minimum necessary to accomplish these purposes.  The sentence requested by the parties accomplishes these goals.

### 1.  Just Punishment and Deterrence

Collateral consequences of criminal conduct and prosecution can properly be considered by the Court in weighing the need for additional punishment. *See e.g., United States v. Gaind*, 829 F. Supp. 669, 671 (S.D.N.Y. 1993) (departing from guideline range where defendant was already punished by the loss of his business as a result of EPA-related charges); *United States v. Vigil*, 476 F. Supp. 2d 1231, 1235 (D.N.M. 2007) ("[W]hen evaluating the justness of . . . punishment for the purposes of reaching a reasonable sentence under *United States v. Booker*, it is important to consider all other forms of punishment [the defendant] has already suffered.").

Mr. Lyons understands the significance and seriousness of his offense, the primary harm being the economic loss suffered by the victim.  As a result of his guilty plea and the related SEC investigation, he is no longer able to work as an investment advisor and has lost his livelihood. He faces a long road forward to atone for his conduct while working to pay restitution and supporting his family.

### 2.  Rehabilitation

In promulgating the Sentencing Reform Act, Congress directed the Commission and the courts to impose a sentence of imprisonment only if it served some purpose of sentencing other than rehabilitation, and to use probation with conditions in all other circumstances. *See* 28U.S.C. § 994(k) ("The Commission shall insure that the guidelines reflect the general inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment."); 18 U.S.C. § 3582(a) (instructing courts

to recognize that "imprisonment is not an appropriate means of promoting correction and rehabilitation" when determining whether to impose a sentence of imprisonment and the length of any such sentence); S. Rep. No. 98-225 at 119, 176 (1983); *see also* S. Rep. No. 98-225 at 171, n. 531 (1983) (noting that "if an offense does not warrant imprisonment for some other purpose of sentencing, the committee would expect that the defendant would be placed on probation").

Here, a sentence of incarceration would serve no rehabilitative purpose whatsoever and the presentence report does not identify any rehabilitative services that could benefit Mr. Lyons.

### 3.  The Need to Avoid Unwarranted Disparities in Sentencing

Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). The parties' requested sentence is consistent with sentences imposed on similarly situated defendants in other cases in this district involving financial fraud.  The circumstances surrounding this offense are similar and, in some cases, less serious in terms of financial loss than other criminal cases where similar sentences were imposed.

For example, in *United States v. Angiulo,* 1:20-CR-10218-DPW (D. Mass), the defendant pled guilty to one count of failure to collect or pay over tax, one count of tax evasion and one count to evading cash transaction reporting requirements.  Notwithstanding a loss of approximately $3.3 million and structured transactions of approximately $3.4 million, a sentencing guideline range of 37 to 46 months and the government's sentencing recommendation of 27 months' imprisonment, the Court sentenced the defendant to 42 months' probation with a special condition that he serve 18 months home confinement and perform community service while on home confinement.

In *United States v. Koudanis, et, al,* case no. 1:15-cr-10387-PBS (D. Mass.), the government prosecuted the co-owners of a well-known restaurant, Nick's Famous Roast Beef. One co-defendant, Nicholas Markos, skimmed $5.9 million in cash receipts from their restaurant that he failed to report to the IRS on corporate and personal tax returns. Another co-defendant, Steven Koudanis, provided false documents to conceal the fraud during an audit.

Nicholas Marcos pled guilty to multiple tax counts and was sentenced to one year probation with home confinement and electronic monitoring based on a loss of $1.9 million and a sentencing guideline range of 30 to 37 months. Co-defendant Steven Koudanis pled guilty to impeding and impairing the IRS and was sentenced to one year probation based on a loss of $390,265 and a sentencing guideline range of 21 to 27 months.

Finally, in *United States v. Panousos,* case no. 1:17-cr-19227-DPW (D. Mass), the government prosecuted the owners of Giovani's Roast Beef for tax related offenses. Three co-defendants, William Panousos, Konstantinos Panousos and Theodora Panousos were charged with skimming more than $900,000 per year from the restaurant resulting in a loss of approximately $550,000. After the IRS executed search warrants on their business and homes, Theodora and Konstantinos removed cash from a safety deposit box to conceal the crime.

William Panousos pled guilty and was sentenced to three years' probation based on a tax loss of $550,000 and a sentencing guideline range of 18 to 24 months. Theodora and Konstantinos Pansousos also pled guilty and were each sentenced to 3 years' probation based on a loss of $550,000 with a sentencing guideline range of 24 to 30 months.

As in these cases illustrate, the parties' proposed disposition is consistent with sentences imposed in other cases, some with higher financial losses, and higher sentencing guideline ranges.

## **CONCLUSION**

The parties' agreed upon disposition is "sufficient but not greater than necessary" after consideration of the 18 U.S.C. § 3553(a) factors considering the amount of the loss, the conduct to which Lyon's has pled guilty and his prompt and full acceptance of responsibility.  Mr. Lyons respectfully requests that the Court accept his plea and impose the agreed upon sentence.

Respectfully submitted,

Eric Lyons

By his attorney,

/s/ William J. Lovett
William J. Lovett (BBO #643525)
LOVETT O'BRIEN LLP
125 High Street, Suite 2611
Boston, MA 02110
Telephone: (617) 603-0748
Fax: (617) 314-0447
wlovett@lovettobrien.com

Dated: February 20, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via the Court's electronic filing system and served to all counsel of record on February 20, 2023.

/s/ William J. Lovett
William J. Lovett